UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LYONS PARTNERSHIP, L.P.; HIT
ENTERTAINMENT, INC.; GULLANE
(DELAWARE) LLC; and THOMAS
LICENSING, LLC,

               Plaintiffs,

v.

GREAT AMERICAN MASQUERADE, GAG,
GIFT & GADGET SHOP, INC. D/B/A
ABRACADABRA, PAUL BLUM, ALLEN
DALTON PRODUCTIONS, LLC, ALLEN
DALTON, CARRIE FEINER ENTERPRISES,
LLC, CARRIE FEINER, CROSS COUNTY
CHILDRENS ENTERTAINMENT, INC. D/B/A
KID-O-ROBICS, BRUCE K. MOGAVERO, AND
VINCENT REVERDY D/B/A CONNECTED
EVENT CREATION,

               Defendants.

**07 CIV 7112**

Docket No. _____

Judge Sullivan

ECF CASE
(RJS)(AJP)

**COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
AUG 09 2007
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiffs Lyons Partnership, L.P. ("Lyons"); HIT Entertainment, Inc. ("HIT"); and

Gullane (Delaware) LLC and Thomas Licensing, LLC (collectively, "Gullane", and together

with Lyons and HIT, "Plaintiffs"), by their undersigned attorneys, as and for their Complaint

herein, allege as follows:

**NATURE OF THE ACTION**

     1.    Plaintiffs are the owners and/or exclusive United States licensees of the

intellectual property rights in and to some of the most beloved children's characters – Barney®,

Baby Bop®, and BJ®, Bob the Builder® and Thomas the Tank Engine™.  Plaintiffs bring this

action to prevent defendants from *inter alia*, using or renting, offering to use or rent, or inducing

others to use or rent cheap, knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and

"Thomas the Tank Engine" costumes to provide children's entertainment services, and from advertising, promoting, or marketing such services using Plaintiffs' registered and unregistered trademarks and copyrights. Plaintiffs do not license the manufacture, sale, or distribution of adult-sized costumes (except under limited circumstances described below) because of the inherent danger such costumes can pose to the characters' young fans in the hands of unscrupulous adults.

2.      Lyons is the owner of the intellectual property rights in and to the characters Barney®, Baby Bop®, and BJ® (hereinafter, each a "Barney® Character", and, collectively, the "Barney® Characters"). HIT is the exclusive United States licensee of the intellectual property rights in and to the character Bob the Builder® (hereinafter the "Bob the Builder® Character") Gullane, by way of exclusive licenses, controls all rights in the United States in and to the character, Thomas the Tank Engine™ (hereinafter, the "Thomas™ Character"). The aforementioned characters are collectively denominated the "Protected Characters".

3.      Plaintiffs raise the following causes of action – trademark infringement of Plaintiffs' registered and unregistered marks in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; false designation of origin and false descriptions and representations in commerce under Section 43 of the Lanham Act, 15 U.S.C. § 1125; copyright infringement in violation of 17 U.S.C. § 501 *et seq.*; common law unfair competition under New York law; common law trademark infringement under New York law; and violation of Section 360-*l* of New York General Business Law – and Plaintiffs seek damages, an accounting of each defendants' infringing profits; and impoundment and destruction of the infringing costumes under both the Lanham Act and the Copyright Act. Plaintiffs further seek preliminary

2

and permanent injunctive relief to enjoin Defendants from continuing to infringe upon Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over Defendants because Defendants transact business in the State of New York and in this judicial district. In addition, the Court has personal jurisdiction over Defendants pursuant to New York CPLR §§ 301 and 302, because Defendants committed tortious acts within and without the State of New York and this judicial district.

5.      This Court has original subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), as the state and federal claims derive from a common nucleus of operative facts and form part of the same case or controversy.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

### Plaintiffs

7.      Lyons is a limited partnership duly organized and existing under the laws of Texas. Its principal place of business is in Allen, Texas. Lyons was established as a limited partnership in April 1992, having previously been a division of DLM, Inc., a Texas corporation. When established as a limited partnership, all of the business, intellectual property, and goodwill of DLM, Inc. relating to the Barney®, Baby Bop®, and BJ® children's dinosaur characters were assigned to Lyons. Lyons is engaged in, among other things, the creation, production, and distribution of books, videocassettes, television programs and plush dolls, and has commercially exploited and licensed the Barney® Characters depicted therein, all of which products are created by Lyons for the enjoyment of preschool children.

3

8.    HIT is a company organized and existing under the laws of the State of Delaware with its principal office and place of business in New York, New York.  HIT, together with its United States and United Kingdom affiliate companies, is a fully integrated studio that produces and distributes worldwide television programming and home entertainment, publishing, and other licensed merchandising depicting many of the most beloved classic children's entertainment properties, including the Barney® Characters, Bob the Builder®, and Thomas the Tank Engine™.

9.    Gullane (Delaware) LLC is a limited liability company organized and existing under Delaware law with its principal place of business in New York, New York.  Thomas Licensing, LLC is a limited liability company with its principal place of business in New York, New York.  Gullane (Delaware) LLC and Thomas Licensing, LLC are the exclusive United States licensees of all trademarks, copyrights, and other intellectual property rights in and to the popular children's television series "Thomas & Friends™" (the "Thomas™ Series"), and the videotapes, DVDs, and other products featuring the classic locomotive character, Thomas the Tank Engine™.

### Business Entity Defendants

10.    **Defendants Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra and Paul Blum**

a.    **Entity**.  Defendant Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal place of business at 19 West 21st Street, New York, New York 10010.  Upon information and belief, defendant Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra is engaged in the businesses of purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent and/or using

4

adult-sized costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services. Upon information and belief, Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra transacts substantial business in this District.

          b.    **Owner**.  Upon information and belief, defendant Paul Blum is, and at all relevant times was, an officer, director, and/or shareholder of Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra and owns, operates, and/or otherwise controls Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra.  Upon information and belief, Paul Blum: (a) is personally responsible for the daily management, operation and financial control of Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra; (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint; and/or (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant Paul Blum resides in and/or transacts substantial business in this District (hereinafter, Paul Blum and Great American Masquerade, Gag, Gift & Gadget Shop, Inc. d/b/a Abracadabra will collectively be referred to as "Abracadabra").

11.    **Defendants Allen Dalton Productions, LLC and Allen Dalton**

          a.    **Entity**.  Defendant Allen Dalton Productions, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of New York with its principal place of business at 157 East 57th Street, New York, New York 10022.  Upon information and belief, defendant Allen Dalton Productions, LLC is engaged in the businesses of

purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent and/or using adult-sized costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing and/or otherwise advertising such services. Upon information and belief, Allen Dalton Productions, LLC transacts substantial business in this District.

        b.    **Owner**.  Upon information and belief, defendant Allen Dalton is, and at all relevant times was, an officer, director, and/or shareholder of Allen Dalton Productions, LLC and owns, operates, and/or otherwise controls Allen Dalton Productions, LLC.  Upon information and belief, Allen Dalton: (a) is personally responsible for the daily management, operation and financial control of Allen Dalton Productions, LLC; (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint; and/or (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant Allen Dalton resides in and/or transacts substantial business in this District (hereinafter, Allen Dalton and Allen Dalton Productions, LLC will collectively be referred to as "Allen Dalton").

    12.    **Defendants Carrie Feiner Enterprises, LLC and Carrie Feiner**

        a.    **Entity**.  Defendant Carrie Feiner Enterprises, LLC  is, and at all relevant times was, a limited liability company organized and existing under the laws of New York with its principal place of business at 73 Fox Meadow Road, Scarsdale, New York 10583.  Upon information and belief, defendant Carrie Feiner Enterprises, LLC is engaged in the businesses of purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-sized costumes depicting popular television and cartoon characters, including one or

more of Plaintiffs' Protected Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services. Upon information and belief, Carrie Feiner Enterprises, LLC transacts substantial business in this District.

b.    **Owner**.  Upon information and belief, defendant Carrie Feiner is, and at all relevant times was, an officer, director, and/or shareholder of Carrie Feiner Enterprises, LLC and owns, operates, and/or otherwise controls Carrie Feiner Enterprises, LLC.  Upon information and belief, Carrie Feiner: (a) is personally responsible for the daily management, operation, and financial control of Carrie Feiner Enterprises, LLC; (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint; and/or (c) has a direct financial interest in such infringing activities.  Upon information and belief, Defendant Carrie Feiner resides in and/or transacts substantial business in this District (hereinafter, Carrie Feiner and Carrie Feiner Enterprises, LLC will collectively be referred to as "Carrie Feiner").

13.    **Defendants Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics and Bruce K. Mogavero**

a.    **Entity**.  Defendant Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics is, and at all relevant times was, a corporation organized and existing under the laws of New York with its principal place of business at 6 Upper Mall Walk, Yonkers, New York 10704. Upon information and belief, defendant Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics is engaged in the businesses of purchasing, distributing, displaying, selling, renting, and/or using adult-sized costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected Characters; providing entertainment services, including

7

planning and providing entertainment for children's parties using such character costumes; and promoting, marketing, and/or otherwise advertising such services. Upon information and belief, Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics transacts substantial business in this District.

b. **Owner**. Upon information and belief, Defendant Bruce K. Mogavero is, and at all relevant times was, an officer, director, and/or shareholder of Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics and owns, operates, and/or otherwise controls Cross County Childrens Entertainment, Inc. Upon information and belief, Bruce K. Mogavero: (a) is personally responsible for the daily management, operation, and financial control of Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics (b) personally participated in and/or had the right and ability to supervise, direct, and control infringing activities alleged in this Complaint, and (c) has a direct financial interest in such infringing activities. Upon information and belief, Defendant Bruce K. Mogavero resides in and/or transacts substantial business in this District (hereinafter, Bruce K. Mogavero and Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics will collectively be referred to as "Cross County").

### Sole Proprietorship Defendants

14. **Defendant Vincent Reverdy d/b/a Connected Event Creation**.

a. Upon information and belief, Defendant Vincent Reverdy ("Reverdy") is an individual doing business as Connected Event Creation, with a principal place of business at 122 East 7th Street, New York, New York 10009. Upon information and belief, Reverdy is, and at all relevant times was, engaged in the businesses of purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-sized costumes depicting popular television and cartoon characters, including one or more of Plaintiffs' Protected

8

{A060370.DOC\3}

Characters; providing entertainment services, including planning and providing entertainment for children's parties using such character costumes; and promoting, marketing and/or otherwise advertising such services.

## FACTS

A.     **History of and Rights in the Barney® Characters.**

15.     Lyons is the creator and owner of the famous Barney® children's characters. Lyons owns numerous existing federal trademark and service mark registrations. Lyons is also the owner of numerous existing federal copyrights.

16.     Barney® is a purple, highly stylized "Tyrannosaurus Rex" type dinosaur with a swath of green down his chest and stomach. Barney® is further recognized by his friendly mien, "mitten shaped" hands, straight line of "teeth," and rounded body parts. This appearance and trade dress of Barney® is distinctive and results from the combination of a number of arbitrary elements, including, but not limited to, the proportion of the character's oversized, rounded head, the shape of his tail, the combination and configuration of colors, the representation of teeth, the placement of eyes and the use of yellow "toe" balls on his feet. Barney® is a positive, wholesome character who encourages children to use their imaginations and to solve problems. Barney® is brought to life by an actor (in a specially designed costume) as a six foot tall helpmate and friend through the imagination of children. A true and correct picture of Barney® is attached hereto as Exhibit A.

17.     The first videotape featuring Barney® was *"The Backyard Show."* Since 1988, Lyons has produced and sold 49 original Barney® videotapes for home viewing. A true and complete copy of the federal copyright registration protecting *"The Backyard Show"* is attached hereto as Exhibit B.

{A060370.DOC\3}

18.    On April 6, 1992, the Public Broadcasting Service ("PBS") began airing a new series, *"Barney & Friends*™*"* (the "Barney® Series"), featuring the Barney® character. More than 228 episodes of the Series have been produced by Lyons.

19.    In 1991, DLM, Inc. created Baby Bop®, another highly stylized dinosaur character. The appearance and trade dress of Baby Bop® is distinctive, and the character appears as a green, highly stylized "Triceratops" type dinosaur with a purple chest and stomach, black eyelashes, pink dancing slippers, and a pink bow in her feathery hair. A true and correct picture of Baby Bop® is attached hereto as Exhibit D. The character's appearance is protected by a federal service mark registration for entertainment services. A true and complete copy of this registration is attached hereto as Exhibit E. Baby Bop® made her first appearance in a video entitled *"Barney in Concert"* and is featured with Barney® in videos and elsewhere. A true and complete copy of the federal copyright registration protecting *"Barney in Concert"* is attached hereto as Exhibit F.

20.    A third dinosaur character, BJ®, was created by Lyons in 1993. The appearance and trade dress of BJ® is distinctive and the character appears as a yellow, highly stylized "Stegosaurus" type dinosaur, with a green chest and stomach, a smattering of freckles across his nose, red high top sneakers, and a red baseball cap, often turned askew. A true and correct picture of BJ® is attached hereto as Exhibit G. The character's appearance is protected by a federal service mark registration for Entertainment Services. BJ®, portraying Baby Bop®'s older brother, made his first appearance on the Barney® Series in an episode entitled *"Look at Me, I'm 3."* A true and complete copy of this registration is attached hereto as Exhibit H. A true and complete copy of the Federal copyright registration protecting *"Look at Me, I'm 3"* is attached hereto as Exhibit I.

{A060370.DOC\3}

21.    Lyons also manufactures, distributes, and sells plush dolls bearing the unique Barney®, Baby Bop® and BJ® images and trade dress. Photographs of the Barney® Characters plush dolls are attached hereto as Exhibit J. The plush toys are the subject of federal copyright registrations that are attached hereto as Exhibit K. In addition, the configuration of the plush toys is protected by federal trademark registration Nos. 1,807,708 (Barney®), 1,918,112 (Baby Bop®), and 1,937,783 (BJ®), copies of such registrations are attached hereto as Exhibit L.

22.    Lyons further owns rights in approximately 294 books featuring the Barney® Characters, which were created, published, and sold either through licensing agreements with other companies. In addition, in August 1994, Lyons launched the Barney Magazine for children, now published six times a year.

23.    The appearance of Lyons' Barney® Characters are inherently distinctive and serve to identify Lyons as the source of goods and services bearing the images of the Barney® Characters. As stated above, Lyons has obtained federal trademark registrations for the configuration of costumes for the Barney® Characters, as well as registrations for the configuration of plush dolls depicting these characters, and for the appearance of the character for entertainment services. All of these registrations were granted without the United States Patent & Trademark Office requiring proof of secondary meaning, evidencing the inherently distinctive nature of the marks. A true and correct list of those registered trademarks and service marks is attached hereto as Exhibit M.

24.    Alternatively, the Barney® Characters have also acquired distinctiveness through widespread promotion and use. The Barney® Characters enjoy tremendous success, widespread visibility, and goodwill throughout the United States and abroad. The Barney® Characters' smiling appearances and friendly miens have become instantly recognizable to, and loved by,

{A060370.DOC\3}

millions of preschool children and their parents.  The purchasing public has come to associate the Barney® Characters with Lyons as the source of products and services.

25.    Evidence of the existence of such secondary meaning includes, but is not limited to:

a.    the wide recognition by the media of the uniqueness, popularity and excellence of the Barney® Characters.  The Dallas Morning News on May 9, 2004 reported that "a decade or so after it burst onto the television scene [the Series] continues to offer a wholesomely appropriate, educational television for pre-schoolers;" August 1994 issue of Child Magazine lists Barney® as "one of the most influential personalities in young kids' lives";

b.    the numerous positive reviews, nominations and awards received by the Barney® Series and by the videotapes as quality educational programming for preschoolers.  The Series won a Daytime Emmy Award in 2001 and was recently nominated for this honor; Barney® Characters videotapes have received the Parents Choice Award, the Oppenheim Toy Portfolio Gold Seal Award, the California Children's Video Award and the Film Advisory Board Award of Excellence and was recently the recipient of Best Products Call, Home Video/DVD category at the 2006 iParenting Media Awards;

c.    the Barney® Series has been one of the top-rated children's television shows on public television since its debut in April 1992.  In February 2007, the Barney® Series had an average of 1,200,000 viewers per week on PBS.  The Barney® Series also appears daily on the PBS Kids Sprout℠ channel, which is available to over 30 million homes in the United States;

d.    more than one million children who are or have been members of the Barney® Fan Club, and the more than 87,000 fans who visit the Barney® website weekly;

e.    Over 80 million Barney® videos, more than 100 million Barney® books, 30 million plush toys and six million audiotapes and CDs that have been sold;

f.    books embodying the Barney® Character have appeared on Publishers Weekly "Best Sellers" list over 140 times in six years.  Six titles have sold more than two million copies each.  Eleven titles have sold more than a million copies each.  Two Barney® books were named as "outstanding" in the 1997 fall/winter issue of Reviews from the Parents Council.  Other Barney® books have been awarded the Children's Choice Award, the

{A060370.DOC\3}

Parent's Guide to Media Award, the National Parenting Publication Award, and Baby Magazine's Best Books for Children Award;

g. the first two Barney® record albums were recognized as triple platinum (awarded for sales of three million units) and platinum (awarded for sales of one million units), respectively, by the Recording Industry Association of America the first two Barney® Characters' song collections on compact disc and cassette tape have been certified double platinum and gold, respectively, by the Recording Industry Association of America; and the character has been named three times by Billboard Magazine as "Children's Entertainer of the Year" (1996, 1997 and 1998). In December 1997, the Barney® holiday album, "Happy Holidays Love, Barney®," was number two on Billboard's Top Kid Audio chart, and even appeared in Billboard's Top 200 chart, which includes all categories.

26. Preschool children have increasingly identified the Barney® Characters with live performances and appearances. The Barney® Characters appear in a live stage show 365 days a year at a major Barney® attraction at Universal Studios' theme park in Orlando, Florida, which opened in July 1995. On information and belief, more than eight million people have seen this authorized show since its debut.

27. During the period of September 1996 through December 1998, a major stage show tour featuring the Barney® Characters traveled throughout the United States, Canada, Mexico, and the United Kingdom. Nearly two million people attended the show, with performances sold out on numerous occasions. A second major stage show commenced in September 1999, and included approximately 200 shows in 35 cities in its eight month tour. Approximately one million people attended the second stage show during its tour. A third major stage show commenced in January 2003, and included approximately 370 shows in 94 cities. More than 890,000 people have attended this third stage show. The fourth major stage show, the Twentieth Anniversary Tour, is scheduled for Fall 2007 and Spring 2008, and will feature Barney® in 20 cities across the United States.

13

## B.    History of and Rights in the Bob the Builder® Character.

28.    By way of agreement between HIT Entertainment Limited and Keith Chapman, creator of the Bob the Builder® Character, HIT Entertainment Limited is the owner of all United States trademarks related to the character. Further, HIT Entertainment Limited and Keith Chapman are joint owners of the copyright in the Bob the Builder® character. HIT Entertainment Limited has licensed to HIT the sole and exclusive right to exploit and distribute the Bob the Builder® Character and property in the U.S.

29.    In 1997, HIT Entertainment Limited, through its state-of-the-art, stop-frame animation studio, HOT Animation Limited ("HOT"), began developing a stop-frame animated children's television series based upon the Bob the Builder® Character (the "BTB Series"). More than 136 thirty-minute episodes have been produced since then, and production of new episodes continues. Likewise, numerous videotapes and DVDs featuring the Bob the Builder® Character have been produced for HIT Entertainment Limited by HOT.

30.    In 1998, HIT Entertainment Limited licensed the rights to broadcast the BTB Series to BBC TV. Bob the Builder® made his broadcast debut in the United Kingdom in April 1998 on the BBC, and the BTV Series has aired continuously throughout the United States since 2001.

31.    Furthermore, HIT and its licensees have continuously created and published books and other publications featuring the Bob the Builder® Character. To date, the Bob the Builder® Character is featured in 139 books.

32.    The Bob the Builder® Character is identified by a combination of arbitrary and distinct visual elements which make up his overall appearance, design, and trade dress, including, but not limited to, his bright yellow hard hat, his orange and red checkered shirt, his

14

blue overalls, work boots, and his tool belt full of tools. Bob the Builder® is a spirited and positive character, focusing on solving problems with teamwork and a "can do" attitude. A true and correct picture of the Bob the Builder® Character is attached hereto as Exhibit N.

33.     As a result of the immense popularity and exposure of the BTB Series, and the videotapes, DVDs, and books based upon his character, the Bob the Builder® Character is instantly recognized throughout the country by pre-school children and their parents.

34.     HIT has obtained copyright registrations for the BTB Series episodes and for related videotapes, DVDs, and books. A true and correct list of those copyright registrations is attached hereto as Exhibit O.

35.     The appearance of the Bob the Builder® Character is inherently distinctive and serves to identify HIT as the source of goods and services bearing the character's image. HIT has obtained registrations of several federal trademarks and service marks related to the BTB Series and to the Bob the Builder® Character, including a service mark registration protecting the character's appearance for entertainment services. A true and correct list of those registered trademarks and service marks is attached hereto as Exhibit P and Q.

36.     Alternatively, the Bob the Builder® Character has also acquired distinctiveness through widespread promotion and use. The character enjoys tremendous success, widespread visibility, and goodwill throughout the United States and abroad. The purchasing public has come to associate the Bob the Builder® character with HIT as the source of products and services.

37.     Evidence of the existence of such secondary meaning includes, but is not limited to:

            a.      Media recognition of the uniqueness, popularity, and excellence of the
                    BTB Series, including the 2003 Children's Animation Award at the

SPROCKETS International Film Festival, the 2003 Children's Award for Best Animation from the British Academy of Film and Television Arts for the first full length Bob the Builder® feature, *"A Christmas to Remember"*, and the 2007 Children's Best Programme Award from the Home Entertainment Week Awards for the Bob the Builder ® feature *"Built to be Wild"*;

b.    positive reviews, nominations, and awards received by the BTB Series and by the videotapes and DVDs as quality educational programming for preschoolers, including receipt of the 2006 iParenting Media Award, and receipt of the 2006 Aurora Award for Platinum Best of Show;

c.    continued high demand for goods and programs embodying the Bob the Builder® character;

d.    the fact that the BTB Series launched in the United States on the Nick Jr. Channel in January 2001, and was the highest-rated premiere ever on Nick Jr.;

e.    In February 2007, the BTB Series had an average of 1,910,000 viewers per week on PBS. The BTB Series also appears daily on the PBS Kids Sprout$^{SM}$ channel, which is available to thirty million homes in the United States;

f.    the more than 130 countries across five continents in which the BTB Series airs and the attendant global following;

g.    the launch of a new BTB Series in the United States on PBS in 2005 called *"Bob the Builder – Project: Build It"*;

h.    the sale of more than 11 million videos and DVDs in the United States and Canada, many of which have achieved platinum-selling status, and continued demand for additional video and DVD titles;

i.    the sale of more than 17 million Bob the Builder® books in the U.S. and Canada;

j.    the toys and merchandise related to the BTB Series featured in thousands of toy stores across the country;

k.    the immense popularity of the Bob the Builder® interactive website (www.bobthebuilder.com), which launched in 1999 and which is accessed by hundreds of thousands of American visitors each month;

l.    the fact that the Series' theme song, *"Can We Fix It? Yes We Can!"*, released as a single in December 2000, was No. 1 on the United Kingdom

16

singles chart for three weeks and named the best-selling single of 2000, selling over one million copies; and

m.    the success of a major stage show tour featuring Bob the Builder®, called "*Bob the Builder® LIVE!*" which launched in February 2002 and toured throughout the United Kingdom. More than 100,000 people attended the show, with numerous sold out performances. The show was so successful that it was brought to the United States and Canada, where between March 2003 and May 2004, it toured 48 cities, playing 175 shows to audiences totaling more than 371,000 persons.

## C.   History of and Rights in the Thomas the Tank Engine™ Character.

38.    The Thomas™ Character was created by The Reverend W. Awdry in 1945. Over the years, The Reverend Awdry and his son Christopher wrote 39 books featuring the character in illustrated railway stories for children, known as "The Railway Series." Through "The Railway Series" books, the Thomas™ Character became known and beloved as a fussy, Victorian-era tank engine (or locomotive), who repeatedly finds himself getting into mischievous adventures by attempting to do things best left to bigger and more sensible locomotives.

39.    In 1987, Gullane Entertainment, Inc. obtained an exclusive license of all television and merchandising rights related to the Thomas Series in the United States. Those rights were assigned to and assumed by plaintiff Thomas Licensing, LLC in 2005.

40.    In 1998, plaintiff Gullane (Delaware) LLC obtained an exclusive license for all United States publishing rights related to the Railway Series.

41.    The first animated program featuring the Thomas™ Character was produced in 1991. More than 150 episodes have been produced since then, and production of new episodes continues. The Thomas Series is produced using a painstaking and labor-intensive stop-frame animation process, combined with dynamic special effects, to create intricate railway settings, rolling landscapes, and charming individual engine characters.

17

{A060370.DOC\3}

42.    The Thomas™ Character is identified by a combination of arbitrary and distinct visual elements which make up his overall appearance and design. The character is a stylized, Victorian-era locomotive with a whimsical face depicted on the front of the steam engine. The character is further recognized by his distinctive blue body with red and yellow trim, a yellow number "1" painted on his side, the black tank engine with triangular-shaped eyebrows, large round eyes, and a smiling, childlike face. A true and correct picture of the Thomas the Tank Engine™ Character is attached hereto as Exhibit R.

43.    As a result of the immense popularity and exposure of the Thomas Series, the videotapes, DVDs and other products, the Thomas™ Character is instantly recognized throughout the United States by pre-school children and their parents.

44.    Furthermore, Gullane and its licensees have continuously created and published books and other publications featuring the Thomas™ Character. To date, the Thomas™ Character is featured in 367 books.

45.    Gullane and its predecessors and affiliates have secured copyright registrations for the Thomas Series episodes and for related videotapes and DVDs and books. A true and correct list of those copyright registrations is attached hereto as Exhibit S.

46.    Gullane and its predecessors and affiliates have also obtained registration of federal trademarks and service marks related to the Thomas Series and to the Thomas™ Character. A true and correct list of those registered trademarks and service marks is attached hereto as Exhibit T.

47.    The appearance of the Thomas™ Character is inherently distinctive and serves to identify Gullane as the source of goods and services bearing the character's image.

{A060370.DOC\3}

48.    Alternatively, the Thomas™ Character has also acquired distinctiveness through widespread promotion and use.  The character enjoys tremendous success, widespread visibility, and goodwill throughout the United States and abroad.  The purchasing public has come to associate the Thomas™ Character with Gullane as the source of products and services.

49.    Evidence of the existence of such secondary meaning includes, but is not limited to:

a.    the wide recognition by the media of the uniqueness, popularity, and excellence of the Thomas Series, including two daytime Emmy® awards and seven Emmy® award nominations, as well as the nomination for 2005 Property of the Year by the Toy Industry Association Inc.'s Sixth Annual Toy of the Year Awards;

b.    the numerous positive reviews, nominations, and awards received by the Thomas Series and by the videotapes and DVDs as quality educational programming for preschoolers, including endorsements by Kid's First, Parents' Choice, Dr. Toy, Oppenheim, and the Film Advisory Board;

c.    the continued high demand for goods and programs embodying the Thomas™ character, including the Thomas Series which, in February 2007, had an average of 1,350,000 viewers per week on PBS;

d.    the sale of over 47 million videos and DVDs, most of which have achieved platinum-selling status, and continued demand for additional video and DVD titles;

e.    the typical placement of no fewer than four videos of the Thomas Series in VideoScan's "DVD and VHS Top 100" chart weekly;

f.    the sale of over 145 million books in the U.S. and Canada;

g.    the toys and merchandise related to the Thomas Series featured in thousands of toy stores across the United States, and the more than 100 awards given to the leading toy line, the "Thomas & Friends Wooden Railway," since its launch in 1993;

h.    the fact that almost 2 million fans of the Thomas Series attended more than 40 *"Day Out with Thomas®"* live events in 2005 and 2006; and

i.    in 2007, the Thomas™ Character is making his United States live stage debut in the 90-minute musical adventure, *Thomas & Friends Live! On Stage in "Thomas Saves the Day."*

## D.    Protection of the Characters by Plaintiffs

50.    The tremendous success of the Barney® Series, the BTB Series, and the Thomas Series, has brought Plaintiffs many prospective licensing suitors from the business world and toy industry. Plaintiffs have, with careful circumspection, granted licenses for the manufacture and sale of numerous products featuring their characters' trademarks.

51.    Plaintiffs have built their "brands," establishing tremendous equity in the intellectual properties related to their characters, by carefully circumscribing and monitoring all related materials and activities to ensure that they are consistent with each character's image. The characters' images are not licensed for use in connection with any product inappropriate for their young fans. Stringent safety, quality control, and approval standards are imposed upon all licensees of Protected Characters merchandise.

52.    Lyons also has not licensed the manufacture (other than for its own use), distribution, sale, or rental of any costumes for adults that depict the Barney® characters. Lyons has limited the granting of licenses to provide theatrical performances or appearances by costumed characters that look like the Barney® Characters to a select group of third parties (for example, Universal Studios Florida, and only as a permanent attraction in the Orlando theme park). Even at Universal Studios Florida, the Barney® Characters' appearances are limited to scripted stage performances, and Lyons does not permit the Barney® Characters to be used as "walk-around" characters.

53.    Further, Lyons carefully choreographs personal appearances by the Barney® Characters because it considers the children's experience of the Barney® Characters to be one of

{A060370.DOC\3}

utmost trust and confidence. The characters appear only where children are present; it is the children's imaginations that bring the characters to life. No child is ever allowed to see the characters unless they are fully and completely costumed. The Barney® Characters are never seen eating or drinking. The Barney® Characters and all those who travel with them comport themselves in a courteous and appropriate fashion. And Barney® rarely visits any town without making a private visit to the local children's hospital.

54.    HIT similarly has not licensed the manufacture (other than for its own use), distribution, sale, or rental of any costumes for adults depicting the Bob the Builder® character. Moreover, personal appearances by Bob the Builder® are carefully choreographed by HIT.

55.    Gullane also has not licensed the manufacture (other than for its own use), distribution, sale, or rental of any costumes for adults depicting the Thomas the Tank Engine™ character. Moreover, personal appearances by Thomas the Tank Engine™ are carefully choreographed by Gullane.

56.    The primary reason for the decision not to license adult costumes for commercial use is to preserve and carefully monitor the exposure of the Barney® Characters, Bob the Builder®, and Thomas the Tank Engine™, so that very young children will not be distressed or upset by the unpredictable (and potentially dangerous) conduct of unauthorized impersonators in knock-off costumes trading on the goodwill of the Bob the Builder®, Thomas the Tank Engine™, and the Barney® Characters.

57.    In addition, Plaintiffs are concerned that the presentations made by such unauthorized performers would not meet the Protected Characters' image standards, appropriate to such enduring classic characters. For example, a real Barney® costume costs approximately $20,000 to manufacture and weighs about 40 pounds. Significant training is required for the

21

performer wearing the costume to learn how to do the runs, spins, leaps, and dances characteristic of Barney®. Similarly, a real Bob the Builder® costume costs more than $10,000 to manufacture, and significant training is required for the performer wearing the costume to learn how to do the motions and actions characteristic of the Bob the Builder® Character.

58.    Plaintiffs have entered into written license agreements with third parties, authorizing the use of their trademarks and copyrighted characters on dozens of products, including stickers, plush dolls, lunch boxes, coloring books, knapsacks, clothing and toys for pre-school aged children. Under each such agreement, Plaintiffs have the right to control the nature and quality of goods on which their marks and characters are used.

59.    Licensees that manufacture products based upon the Protected Characters are required to follow strict guidelines regarding the quality of such merchandise. These guidelines reflect Plaintiffs' concerns about maintaining and advancing the goodwill and business reputation that they have built in products depicting their characters.

60.    Further, Plaintiffs all require their licensees to display one or more trademark notices on each product to identify it as a legitimate product. Lyons also requires each authorized Lyons product to display a Barney® characters tag.

E.    **Defendants' Unauthorized Use of Plaintiffs' Protected Characters and Marks**

61.    Unfortunately, the popularity and success of these carefully protected properties has created a huge market for cheap knock-offs and illicit goods utilizing the names, likenesses, trademarks, and copyrights of characters owned and licensed by Plaintiffs. Plaintiffs receive frequent reports of unauthorized goods and services, from novelty key chains and third-rate dolls, to "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" impersonators who provide children's entertainment services and endorse products and businesses.

22

62.    Plaintiffs have taken vigorous steps to enforce their intellectual property rights, generally through the procurement of voluntary cessation of infringing activities. Due to the pernicious nature of unauthorized personal appearances by "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" impersonators, Plaintiffs have recently focused considerable effort on entertainment and party service businesses offering knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" costumes.

63.    As part of Plaintiffs' enforcement efforts, Plaintiffs issued demand letters requiring entertainment and party service companies to cease their infringing activities, to surrender their knock-off costumes, and to identify, in writing, the source of their costumes.

64.    Moreover, Lyons, for its part, filed more than 90 enforcement actions in the past six years in more than 20 states against numerous defendants alleged to have infringed Lyons' rights in the Barney® Characters. In each such action, Lyons alleged that defendants had made commercial use of full-size, adult costumes bearing the likeness of the Barney® Characters. Lyons has filed suit against both manufacturers of infringing costumes as well as downstream users who re-sold the costumes, rented them, and/or used them to provide unauthorized performances. Nearly all of these actions have been resolved pursuant to settlement, the terms of which typically include stipulated permanent injunctions against further such activity.

65.    As part of its enforcement efforts, Plaintiffs became aware of numerous individuals and entities engaged in the business of purchasing, distributing, displaying, selling, renting, offering to rent, using, and/or offering to use (and inducing others to do the foregoing) adult-sized costumes depicting Plaintiffs' Protected Characters in conjunction with providing children's entertainment services.

{A060370.DOC\3}

66.     Beginning in April 2006, Plaintiffs issued settlement demand packages to confirmed infringing parties, including the Defendants herein, to provide them with an opportunity to settle with Plaintiffs on reasonable terms without litigation. These packages contained a draft of this Complaint, and a letter demanding that Defendants cease and desist their infringing conduct and compensate Plaintiffs for their infringements to date. To date, Defendants herein have failed to do so.

67.     In order to settle with Plaintiffs, an infringing party was required to: (1) surrender all infringing costumes to Plaintiffs for destruction, (2) complete a questionnaire detailing *inter alia*, how often each infringing costume was used and the amounts charged to provide services using each infringing costume, (3) pay a reasonable settlement amount commensurate with the nature and extent of its infringing activities, and (4) agree to a permanent injunction. The parties would then provide each other with mutual releases.

68.     The Defendants named in this action engaged in infringing activities which may include purchasing, distributing, displaying, selling, renting, and/or using adult-sized character costumes which bear the likenesses and images of the Protected Characters for commercial purposes. Moreover, upon information and belief, Defendants advertise, promote, and/or otherwise market to the public that they provide such services.

69.     **Abracadabra.** Upon information and belief, Abracadabra was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized costumes bearing the likenesses of Bob the Builder® and Thomas the Tank Engine™. Plaintiffs' investigation of Abracadabra's infringing activities revealed that on June 6, 2006 and June 8, 2006, Abracadabra offered to provide children's entertainment services using knock-off

24

"Bob the Builder" and "Thomas the Tank" costumes. On each occasion, Abracadabra promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks. Accordingly, Paul Blum and Great American Masquerade, Gag, Gift & Gadget Shop, Inc. are jointly and severally liable for copyright and trademark infringement.

70.    **Allen Dalton.** Upon information and belief, Allen Dalton was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized costumes bearing the likeness of Barney® and Bob the Builder®. Plaintiffs' investigation of defendants' infringing activities revealed that on August 5, 2005 and August 12, 2005, Allen Dalton offered to provide children's entertainment services using a knock-off "Barney" and "Bob the Builder" costume. On each occasion, Allen Dalton promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks. Accordingly, Allen Dalton and Allen Dalton Productions, LLC are jointly and severally liable for copyright and trademark infringement.

71.    **Carrie Feiner.** Upon information and belief, Carrie Feiner was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized costumes bearing the likenesses of Barney®. Plaintiffs' investigation of defendant's infringing activities revealed that on June 14, 2006, defendant offered to provide children's entertainment services using knock-off "Barney" costumes. On each occasion, Feiner promoted, advertised, and/or offered her infringing services using one or more of Plaintiffs' marks.

72.    **Cross County.** Upon information and belief, Cross County was and is engaged in the business of providing children's entertainment services, offering to provide children's

25

entertainment services, and/or inducing others to provide children's entertainment services using adult-sized costumes bearing the likeness of Barney®. Plaintiffs' investigation of defendants' infringing activities revealed that on August 9, 2005, Cross County offered to provide children's entertainment services using a knock-off "Barney" costumes. Upon information and belief, Cross County promoted, advertised, and/or offered its infringing services using one or more of Plaintiffs' marks. Accordingly, Bruce K. Mogavero and Cross County Childrens Entertainment, Inc. d/b/a Kid-O-Robics are jointly and severally liable for copyright and trademark infringement.

73.    **Reverdy**. Upon information and belief, Reverdy was and is engaged in the business of providing children's entertainment services, offering to provide children's entertainment services, and/or inducing others to provide children's entertainment services using adult-sized costumes bearing the likenesses of Barney®, Baby Bop®, and Thomas the Tank Engine™. Plaintiffs' investigation of defendant's infringing activities revealed that on August 8, 2005, August 10, 2005, and August 12, 2005, defendant offered to provide children's entertainment services using a knock-off "Barney" and "Thomas the Tank" costumes. On each of these occasions, Reverdy promoted, advertised, and/or offered his infringing services using one or more of Plaintiffs' marks.

74.    Defendants are not authorized licensees or contractors of any of Plaintiffs' Protected Characters.

75.    The overall appearance of Defendants' knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" character costumes is substantially similar to the genuine Protected Characters.

{A060370.DOC\3}

76.    Defendants' "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" character costumes are designed and used for live appearances at children's parties and other events and are intended to suggest that the genuine Protected Characters are appearing.

77.    Defendants' knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" character costumes are passed off as Plaintiffs' genuine characters with the intent to deceive and defraud the public and to appropriate Plaintiffs' exclusive rights in and to the Protected Characters and related intellectual property.

78.    Defendants' conduct is likely to cause confusion, cause mistake, or to deceive consumers, as to the source and origin of defendants' knock-off costumes, as well as the sponsorship of live appearances of the Defendants' knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" costumes.

79.    Defendants' conduct will have a substantial, adverse impact on Plaintiffs' existing and projected interstate business of marketing products and services identified by the Protected Characters and related intellectual property and the resulting goodwill.

80.    Based upon Plaintiffs' investigations, it is clear that Defendants regularly provide to the public children's entertainment services utilizing knock-off costumes, and each receives significant revenue from such services.

81.    Plaintiffs have suffered, and unless such infringing activities are enjoined, Plaintiffs will continue to suffer, irreparable harm.

82.    For all of the foregoing reasons, it is respectfully requested that Defendant be enjoined from using knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" costumes and from otherwise infringing upon Plaintiffs' intellectual property rights in the Protected Characters.

27

{A060370.DOC3}

## COUNT I
### (Infringement of Trademarks, Service Marks & Trade Dress Lanham Act, §§ 32 and 43)

83.     Plaintiffs repeat each allegation contained in paragraphs 1 through 82 of this Complaint.

84.     Lyons is the owner of the federal trademark and service mark registrations relating to the Barney® Characters, a list of which is incorporated by reference and attached hereto. See Exhibit M.  These registrations were duly and lawfully issued by the United States Patent and Trademark Office and remain in full force and effect.

85.     HIT and Gullane are the exclusive United States licensees with respect to federal trademark and service mark registrations relating to the Bob the Builder® and Thomas the Tank Engine™ characters, lists of which are incorporated by reference and attached hereto.  See Exhibits P, Q, and T, respectively.  These registrations were duly and lawfully issued by the United States Patent and Trademark Office and remain in full force and effect.

86.     Defendants have intentionally and knowingly copied Plaintiffs' distinctive trademarks and trade dress in the Protected Characters by the design, manufacture, sale, and distribution of adult knock-off costumes similar or identical in appearance to the Protected Characters.

87.     Upon information and belief, like Lyons' Barney® character, Defendants' knock-off "Barney" costumes look like a highly stylized purple Tyrannosaurus Rex-type dinosaur with green chest and stomach.

88.     Upon information and belief, like Lyons' Baby Bop® character, Defendants' knock-off "Baby Bop" costumes look like a highly stylized green Triceratops-type dinosaur with purple chest and stomach, black eyelashes, pink dancing slippers, and a pink bow in her hair.

28

89.    Upon information and belief, like HIT's Bob the Builder® character, Defendants' knock-off "Bob the Builder" costumes look like a construction worker, with a smiling face, blue work overalls, a yellow shirt, a utility belt, work boots, and a yellow construction hat.

90.    Upon information and belief, like Gullane's Thomas the Tank Engine™ character, Defendants' knock-off "Thomas the Tank Engine" costumes look like a Victorian-era locomotive with blue body with red and yellow trim, a black tank engine with triangular-shaped eyebrows, large round eyes, and a smiling, childlike face on the front.

91.    Upon information and belief, the overall appearances of Defendants' knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" costumes are substantially similar or virtually identical to the Protected Characters.

92.    While Plaintiffs do not license the manufacture or distribution of any Barney®, Baby Bop®, BJ®, Bob the Builder®, and Thomas the Tank Engine™ adult-sized character costumes (except as stated above), the Protected Characters regularly appear in live theatrical shows sponsored by Plaintiffs and/or make select personal appearances selected by Plaintiffs before thousands of children.

93.    Defendants' provide their knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" costumes and/or induce others to provide such costumes for use in live appearances targeting children.  Defendants' infringing products are thus presented to children through the same or similar channels in which legitimate Protected Characters are presented.

94.    Defendants' advertising, marketing, promotion, display, and/or distribution of knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" character costumes target preschool children who are the biggest fans and customers of the Protected Characters and related products.

95. Defendants, without permission, license, or authority from Plaintiffs, advertised, promoted, marketed, sold, offered to sell, rented, offered to rent, and/or distributed (and/or induced others to engage in such activities) children's entertainment services using the knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" costumes, in violation of the rights of Plaintiffs, within this District.

96. Prior to the acts of Defendants complained of herein:

    a.    Plaintiffs exploited their Protected Characters via the production and sale and/or licensing of videotapes, DVDs, books and other products, under their various trademarks and copyrights, which have enjoyed a deserved favorable reputation of great value;

    b.    Plaintiffs expended and continue to spend large sums of money to build, maintain, and extend their reputations;

    c.    Plaintiffs engaged and continue to engage in interstate activities designed to promote the products sold and the goodwill associated with their registered and unregistered trademarks, service marks, and trade dress throughout the United States;

    d.    Plaintiffs engaged in, and continue to engage in, interstate activities designed to promote the business and goodwill identified by each of the registered and unregistered trademarks, service marks, and trade dress in interstate commerce and to expand the use and reputation of the trademarks, service marks, trade dress, and property throughout the United States;

    e.    the registered and unregistered trademarks, service marks and trade dress have been and continue to be known in numerous states, including New York, as marks identifying and distinguishing the products and services of Plaintiffs, respectively; and

    f.    the registered and unregistered trademarks, service marks, and trade dress relating to the Protected Characters are inherently distinctive, and have been and continue to be known throughout the United States, including New York, as identifying and distinguishing the business of Plaintiffs, respectively.

97.    Defendants' conduct is likely to cause confusion, cause mistake, or to deceive consumers as to the source, origin, and sponsorship of the live appearances of the knock-off "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas" costumes.

98.    Upon information and belief, Defendants' activities have caused actual confusion with consumers as to the source and origin of such costumes.

99.    The acts of Defendants will nullify Plaintiffs' right to the exclusive use of their trademarks, service marks, and trade dress, free from infringement.

100.    Defendants' activities have had and will continue to have a substantial, adverse effect on Plaintiffs' existing and projected future interstate business of marketing products and services identified by the trademarks, service marks, and trade dress, and on the goodwill of Plaintiffs' business connected with the use of, and symbolized by, trademarks, service marks, and trade dress.

101.    Defendants' activities and conduct constitute infringement of each of the Protected Characters' related trademarks and trade dress, in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

102.    In addition, upon information and belief, Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

103.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless their conduct is enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages. Accordingly, Plaintiffs seek preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

{A060370.DOC\3}

104.    Defendants have intentionally and knowingly used the Protected Characters-related trade dress, service marks, and trademarks; accordingly, Plaintiffs are entitled to a judgment of three times their damages, or Defendants' profits, whichever is greater, together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

## COUNT II
### (False Designation of Origin/False Description – Lanham Act, §43(a))

105.    Plaintiffs repeat each allegation contained in paragraphs 1 through 104 of this Complaint.

106.    Lyons is the owner of the intellectual property rights associated with the Barney® Characters, and HIT and Gullane are the exclusive United States licensees for the intellectual property associated with the Bob the Builder® and Thomas the Tank Engine™ Characters and their trade dress. All of the Protected Characters are enjoyed by children and their parents throughout the United States.

107.    The appearances of the Protected Characters constitute inherently distinctive trade dress.

108.    Plaintiffs have used the Protected Characters and their distinctive trade dress to provide a secure, friendly, loving feeling for pre-school children who have come to believe in the Protected Characters as their extraordinary friends.

109.    Plaintiffs have manufactured, marketed and sold videotapes, DVDs, and books and a variety of other products featuring the Protected Characters, and have realized substantial income from such sales.

110.    The Protected Characters and their trade dress are recognized as distinctive and have developed and now possess secondary trademark meaning to the viewers of the Protected

32

Characters' television series, videotapes and DVDs and the authorized personal and/or theatrical appearances, and to the purchasers of featuring the Protected Characters products.

111.    The acts of Defendants constitute false designations of origin, false descriptions and representations, and infringement of the trade dress in and to the Protected Characters. Specifically, Defendants have used, in connection with the provision of, or offering to provide knock-off costumes depicting the Protected Characters, words, terms, names, symbols, and devices, and combinations thereof, and false or misleading descriptions and representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

112.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

113.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

**COUNT III**
**(Unfair Competition – Lanham Act, § 43(a)(1)(B)**

114.    Plaintiffs repeat each allegation contained in paragraphs 1 through 113 of this Complaint.

115.    Defendants' conduct constitutes an attempt to pass off and palm off their products and services as the products and services of Plaintiffs and their licensees with the intent to deceive and defraud the public and appropriate to itself Plaintiffs' rights in and to the Barney®

33

Characters and the Bob the Builder® and Thomas the Tank Engine™ characters trademarks and service mark. Such acts constitute acts of unfair competition against Plaintiffs under 15 U.S.C. § 1125(a)(1)(B).

116.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Accordingly, Plaintiffs are entitled to recover their damages, as well as Defendants' profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a).

117.    Unless Defendants' conduct is enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

118.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## COUNT IV
**(Infringement of Copyright by Plaintiffs HIT, Lyons and Gullane
Copyright Act, 17 U.S.C. § 501 et seq.)**

119.    Plaintiffs repeat each allegation contained in paragraphs 1 through 118 of this Complaint.

120.    Lyons is the owner of the federal copyright registrations in the Barney® Series, as well as other videotapes, DVDs, books, and live stage shows, a representative list of which is incorporated by reference and attached hereto. See Exhibits C, F I, and K. These registrations were duly and lawfully issued by the Copyright Office and remain in full force and effect.

121.    HIT is the exclusive United States licensee with respect to federal copyright registrations in episodes of the BTB Series, as well as other videotapes, DVDs and books, a representative list of which is incorporated by reference and attached hereto. See Exhibit O.

34

These registrations were duly and lawfully issued by the Copyright Office and remain in full force and effect.

122.    Gullane is the exclusive United States licensee with respect to federal copyright registrations in episodes of the Thomas Series, as well as other videotapes, DVDs, books and live stage performances, a representative list of which is incorporated by reference and attached hereto. See Exhibit S.  These registrations were duly and lawfully issued by the Copyright Office and remain in full force and effect.

123.    The Barney® Characters and the Bob the Builder® and Thomas the Tank Engine™ characters are the subject of copyright protection.

124.    Lyons, HIT, and Gullane have published the copyrighted works featuring the Protected Characters in strict compliance with the provisions of the Copyright Act and all other laws governing copyright, and the images depicted therein, including the Barney® Characters, and the Bob the Builder® and Thomas the Tank Engine™ characters, have been manufactured and distributed under the authority of Lyons, HIT, and Gullane.

125.    Lyons has been and still is the owner, and HIT and Gullane have been and still are the exclusive United States licensees, with respect to all rights, title, and interest in and to the copyrights in their respective works.

126.    Defendants have infringed the copyrights in the above-entitled works and in the Barney®, Bob the Builder®, and Thomas the Tank Engine™ characters contained therein by copying, displaying, distributing, renting and/or selling knock-off costumes depicting images substantially similar to the copyrighted elements of the works in violation of the Copyright Act.

127.    Based on Defendants' activities, Lyons, HIT, and Gullane reasonably believe that Defendants intend to continue the advertisement, marketing, promotion, sale, rental, display, and

distribution of their knock-off "Barney", "Baby Bop," "BJ", "Bob the Builder", and "Thomas the Tank Engine" costumes.

128.    Lyons, HIT, and Gullane have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless their conduct is enjoined, Lyons, HIT, and Gullane and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages. Accordingly, Lyons, HIT, and Gullane seek preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

129.    Plaintiffs are entitled to recover damages, which include its actual losses and any and all profits Defendants have made as a result of their infringing conduct. 17 U.S.C. § 504. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c).

130.    Upon information and belief, Defendants' actions are willful, in that their actions were at least in reckless disregard of Plaintiffs' rights in and to the Protected Characters. Accordingly, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

131.    Furthermore, Plaintiffs are entitled to recover their full costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT V
### Common Law Unfair Competition

132.    Plaintiffs repeat each allegation contained in paragraphs 1 through 131 of this Complaint.

133.    Upon information and belief, Defendants' actions as described above have been undertaken with the intention of benefiting from and profiting upon the name and associated goodwill connected with the Protected Characters. This goal is accomplished by Defendants' use of the name and trademarks and accompanying trade dress owned by Plaintiffs.

{A060370.DOC\3}

134.    Defendants' use of the name and trademarks and accompanying trade dress owned by Plaintiffs is intended to and unless restrained by this Court will lead and tends to lead the public to believe that there is a connection or association between Defendants and Plaintiffs, when in fact there is none.

135.    Upon information and belief, Defendants have made and, unless enjoined, will continue to make considerable profit as the direct result of their wrongful actions, which have been undertaken in wanton, willful, and reckless disregard of Plaintiffs' rights.

136.    Defendants' actions injure Plaintiffs' reputation and goodwill and expressly mislead the public by falsely imputing a connection or relationship between Defendants' inferior products and services and Plaintiffs, will cause Plaintiffs to suffer financially, and constitute unfair competition in derogation of the common law of the State of New York.

## COUNT V
### Common Law Trademark Infringement

137.    Plaintiffs repeat each allegation contained in paragraphs 1 through 136 of this Complaint.

138.    Defendants have used their substantially similar or virtually identical "Barney", "Baby Bop", "Bob the Builder", and "Thomas" character costumes in performances offered to consumers in New York State, and have thus infringed on Plaintiffs' exclusive common law trademark rights.

139.    Such conduct is likely to cause confusion, deception, and mistake in the minds of members of the public with respect to the origin, source, and affiliation of one or more of Defendants' knock-off "Barney" "Baby Bop", "Bob the Builder", and "Thomas" character costumes.

37

140.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless their conduct is enjoined, Plaintiffs and their goodwill, business reputation, and the distinctive quality of Plaintiffs' trademarks, service marks and trade dress will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

141.    Plaintiffs have no adequate remedy at law.

142.    Defendants' wrongful conduct arises directly out of and is connected to Defendants' advertising activities.

## COUNT VII
### (Violation of Section 360-*l* of the New York General Business Law)

143.    Plaintiffs repeat each allegation contained in paragraphs 1 through 142 of this Complaint.

144.    The Barney® Characters and the Bob the Builder® and Thomas the Tank Engine™ Characters are distinctive and/or have acquired secondary meaning in the marketplace.

145.    Defendants' acts as described above are likely to dilute, have diluted and, unless enjoined, will continue to dilute the unique and distinctive quality of Plaintiffs' trademarks in the Barney® Characters and the Bob the Builder® and Thomas the Tank Engine™ Characters.

146.    Specifically, Defendants' use of marks substantially similar or virtually identical to the those of one or more of the Barney® Characters and the Bob the Builder® and Thomas the Tank Engine™ Characters in conjunction with the offering and provision of children's entertainment services blur and dilute Plaintiffs' trademarks in such characters as unique identifiers of Plaintiffs' television programs, movies, DVDs, books, and other media products featuring the Barney® Characters and the Bob the Builder® and Thomas the Tank Engine™ Characters.

38

147.    Alternatively, the shoddy quality of Defendants' knock-off "Barney", "Baby Bop", "Bob the Builder" and "Thomas" character costumes that Defendants use in renting or selling costumes and/or providing children's entertainment services tarnishes and dilutes Plaintiffs' trademarks as the purchasing public will associate the lack of quality of Defendants' costumes with Plaintiffs.

148.    Defendants' conduct violates Section 360-*l* of the New York General Business Law.

149.    As a direct and proximate result of Defendants' willful and wanton acts and conduct, Plaintiffs' reputation and goodwill have been damaged.

150.    Defendants' acts and conduct cause irreparable injury to Plaintiffs and to its reputation and goodwill, and will continue to do so unless enjoined by this Court.

151.    Plaintiffs have no adequate remedy at law.

152.    Defendants' wrongful conduct arises directly out of and is connected to Defendants' advertising activities.

WHEREFORE, Plaintiffs pray for the following relief:

1.    That Defendants and their respective agents, servants, employees, contractors, and all persons, firms, corporations, or entities acting under Defendants' direction, authority or control, and all persons acting in concert with any of them, be enjoined preliminarily and permanently from: (a) purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes depicting the Barney®, Baby Bop®, and BJ®, Bob the Builder®, and Thomas the Tank Engine™ characters for children's entertainment services or otherwise; (b) using Plaintiffs' copyrights, trademarks, service marks,

{A060370.DOC3}

logos, and trade dress, or any copy or imitation of any of them in any manner, including, but not limited to advertising, promoting, and/or marketing children's entertainment services; and (c) committing or inducing others to commit any other infringing acts calculated to cause purchasers to believe that Defendants' adult-size costumes are Plaintiffs' genuine products;

2.      That Defendants be required to account pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117 for Plaintiffs' losses and Defendants' profits derived from advertising, promoting, marketing, purchasing, distributing, displaying, selling, offering to sell, renting, offering to rent, and/or using adult-size costumes depicting the Barney®, Baby Bop®, and BJ®, Bob the Builder®, and Thomas the Tank Engine™ characters for children's entertainment services;

3.      That Defendants be ordered to pay statutory damages for willful copyright infringement in an amount of not less than $150,000 per copyrighted work infringed;

4.      That Plaintiffs be awarded damages in an amount to be determined at trial in connection with Defendants' acts of trademark infringement, unfair competition, and dilution of Plaintiffs' trademark and trade dress under both the Lanham Act and New York Law;

5.      That all infringing "Barney", "Baby Bop", "BJ", "Bob the Builder", and "Thomas the Tank Engine" character costumes, all advertising incorporating Plaintiffs' copyrights, trademarks, service marks, logos, and trade dress, or any copy or imitation of any of them, and any costume molds be surrendered,

{A060370.DOC\3}

impounded, and destroyed pursuant to Lanham Act, 15 U.S.C. § 1118 and Copyright Act, 17 U.S.C. § 503;

6.      That Defendants be ordered to pay Plaintiffs' costs incurred herein, including reasonable attorneys' fees;

7.      That trebling of damages be ascertained for all trademark damages assessed herein;

8.      That exemplary and punitive trademark damages be awarded; and

9.      That Plaintiffs be awarded such other and further relief as is just, proper, and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all issues so triable.

DATED:      August 9, 2007              By: _____
                                            Toby M. J. Butterfield
                                            Matthew A. Kaplan

                                        COWAN, DeBAETS, ABRAHAMS &
                                        SHEPPARD LLP
                                        41 Madison Avenue, 34th Floor
                                        New York, New York 10010
                                        Tel:  (212) 974-7474
                                        Fax:  (212) 974-8474

                                        Attorneys for Plaintiffs
                                        LYONS PARTNERSHIP, L.P.;
                                        HIT ENTERTAINMENT, INC.;
                                        GULLANE (DELAWARE) LLC;
                                        THOMAS LICENSING, LLC,

41